UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EMPLOYEE BENEFIT PLAN of COMPASS GROUP USA, INC., | : : : |
| Plaintiff, | : : |
| v. | : Case No. 3:14-cv-00389 (RNC) : |
| MILLER, ROSNICK, D'AMICO, AUGUST & BUTLER, P.C., | : : : |
| Defendant. | : |

## RULING AND ORDER

Plaintiff Employee Benefit Plan of Compass Group USA, Inc., is the fiduciary of an employee welfare benefit plan ("the Plan") administered pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). William Marino, a participant in the Plan, suffered injuries caused by a third party and Plaintiff paid for his medical treatment. Defendant Miller, Rosnick, D'Amico, August & Butler, P.C. ("Miller Rosnick") brought suit against the third party on behalf of Marino, obtained a lump sum settlement, took its attorney's fees and costs from the settlement proceeds, and disbursed the remainder to Marino. A consent judgment has been entered in favor of Plaintiff against Marino in the amount of the medical expenses Plaintiff paid on his behalf, but Plaintiff seeks to recover this amount from Miller Rosnick. The question addressed here is whether the relief Plaintiff seeks against the law firm falls

1

within the scope of § 502(a)(3)(B) of ERISA, which authorizes a fiduciary to bring an action "to obtain appropriate equitable relief" for conduct that violates ERISA or the terms of a plan. Plaintiff contends the answer is yes; Defendant responds the answer is no.  I conclude that Defendant is correct and therefore grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion.

I. Factual Background

The Plan contains a provision entitled "Subrogation and Reimbursement," which provides as follows:

> [I]f a Participant incurs charges or expenses for any illness, injury or other condition as a result of the act of a third party or parties . . . and such Participant has or may have a legal right to seek restitution from such third party, his insurance company or other responsible party for such act, then any payment of benefits made under this Plan based on such illness, injury or other condition automatically shall be subject to the provisions of this Section. The Participant shall advise the Plan of any claim or potential claim he might have against any [such] third party or his insurance company as of the date the person becomes a Participant under this Plan, or, if later, within sixty (60) days of the act which gives rise to such claim if such act also results in payment of benefits being made under the Plan. . . .
>
> If a Participant receives any judgment, settlement or other payment from any person or persons considered responsible for the condition which gives rise to the expenses which the Plan pays, . . . the Participant shall reimburse the Plan from the first of such payments received to the extent of the expenses paid under the Plan regardless of whether the judgment, settlement or other payment allocates any specified amount to medical expenses paid under the Plan.  The Plan's right to recovery shall be enforceable, even if

> the Participant has not been made whole. If the
> Participant fails to timely and fully reimburse the
> Plan for such expenses, any future claims the
> Participant makes under the Plan shall be offset by
> any amounts owed by the Participant to the Plan.

The Plan reserves Plaintiff's right to "request a court to establish a constructive trust or equitable lien" on assets "held by a third party" and to "sue the Participant or a third party in state court for reimbursement of funds held by such party."

Beginning in early 2011, Kerris Brown, an employee of Rawlings Company, LLC, Plaintiff's subrogation agent, communicated with Attorney James Butler at Miller Rosnick regarding Plaintiff's payment of Marino's medical expenses. In a series of communications, Brown provided documentation of medical expenses paid on Marino's behalf, requested information about Marino's lawsuit, and asserted a lien on funds recovered from the lawsuit.

With regard to these communications, the record shows the following. Brown first contacted Butler on February 22. Her letter provided notice of plaintiff's payment of medical expenses on behalf of Marino and requested information regarding his lawsuit against the responsible party. On March 2, Brown sent Butler the first of several summaries of medical expenses paid on behalf of Marino. On April 5, she followed up with

3

Butler regarding her first communication.  This letter again requested information about the lawsuit and noted that "to date, [Butler] ha[d] not provided that information nor acknowledged representation of [Marino]."  On May 17, Brown followed up again, seeking the same information.  She noted that "[f]ailure to provide such information may result in a finding of non-cooperation.  The member may be held accountable for any prejudice to [Plaintiff's] right of recovery as a result of the failure to comply."  On June 7, and again on June 13, Brown sent Butler updated lists of medical expenses.

On June 20, Butler sent a letter to Brown, his first communication to her contained in the record.  In the letter, he commented on the medical expenses claimed by plaintiff but wrote that his "letter [was], in no way, meant to convey that {he] accept[ed] the legitimacy and validity of [Plaintiff's] claimed lien."  On November 11, he wrote to Brown stating that he had requested "documentation" related to plaintiff's claim "[o]n numerous occasions" and been provided no "documentation whatsoever."  Butler threatened legal action if the information was not provided.

On December 5, Ben White, associate general counsel at Rawlings, wrote to Butler.  White's letter suggests that Brown had inquired about the employment status of Marino (salaried or hourly) to ensure she provided Miller Rosnick with

4

the right documentation supporting Plaintiff's claim but Miller Rosnick had failed to provide the requested information. Enclosed with the letter were pertinent pages from both the salaried and hourly plans.

On May 3, 2012, Brown sent a letter to Butler notifying him that Rawlings was aware that Marino had reached a settlement in the civil case. In fact, the case been settled for a lump sum payment of $160,000. The letter requested that Butler contact Brown to arrange for satisfaction of Plaintiff's claim.

On May 8, 2012, Butler responded to Brown. He acknowledged the settlement but argued that Rawlings was attempting to collect on a claimed lien without providing proof of the lien's legitimacy. Butler added that he was "awaiting the Schedule A's that you must file along with the Form 5500 to be in compliance with the reporting requirements under the applicable ERISA statutes." Butler offered to advise Marino to pay $5,000 to settle the matter but stated that "this offer, in no way, acknowledges the validity or legality of [plaintiff's] claim."

About two months later, Butler disbursed the settlement proceeds. Of the total amount of $160,000, Butler disbursed $55,872.68 to his law firm to cover costs, plus another $50,000

5

for attorney's fees. The remaining $54,127,32 was disbursed to Marino and several of his creditors.

Subsequently, on September 6, 2012, White responded to Butler's letter of May 8. White wrote that IRS Form 5500 is not an appropriate tool to determine a plan's funding status. He also enclosed a Summary Plan Description ("SPD").[1]

## II. Procedural History

In 2014, Plaintiff brought this suit against Miller Rosnick and Marino claiming that neither had reimbursed it for covering Marino's medical costs, and seeking "equitable relief in the form of a constructive trust and equitable lien on the amounts held by defendants that rightfully belong[] to plaintiff." After the suit was filed, and while cross-motions for summary judgment were pending, the Supreme Court decided Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan, -- U.S. --, 136 S. Ct. 651 (2016). Montanile held that when a participant in an ERISA plan settles with a third party responsible for his or her injuries, and then "dissipates

---

[1] The record includes the full Plan document, which contains the provision entitled "Reimbursement and Subrogation" set forth above. ECF No. 41 ¶ 6; ECF No. 41-1 at 99-100; see generally id. at 87-190. White's letter of September 6 states that the Plan's subrogation section is attached. But the subrogation section in the attachment to the letter does not appear in the Plan document itself. ECF No. 41-3 at 42-48.

6

the whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502(a)(3) because the suit is not one for 'appropriate equitable relief.'" Id. at 655. The parties submitted supplemental briefing with regard to Montanile. After reviewing the supplemental briefing, I concluded that further discovery was necessary to determine whether the settlement funds at issue here had been dissipated. The motions for summary judgment were denied pending completion of that discovery.

Discovery disputes arose. To resolve an impasse with regard to discovery, Defendant stipulated that it "waives and will not assert any defense to [Plaintiff's] claim(s) that may be available pursuant to [Montanile] and which is based on [Defendant's] purported dissipation, commingling or otherwise disbursing its fee and costs incurred in connection with the legal representation provided" to Marino. That same month, a consent judgment entered against Marino in the amount of $33,267.92, terminating his status as a party. Plaintiff and Defendant then renewed their cross-motions for summary judgment.

### III. Analysis

Summary judgment may be granted when there is no "genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

7

A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Coutard v. Mun. Credit Union, 848 F.3d 102, 114 (2d Cir. 2017) (quoting Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

The issue in this case is purely legal - whether Plaintiff's claim against Defendant seeks relief within the scope of § 502(a)(3)of ERISA. This section of ERISA provides that a fiduciary may sue: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

The meaning of "appropriate equitable relief" in § 502(a)(3) has been addressed by the Supreme Court in a series of cases. "Under [the Supreme] Court's precedents, whether the remedy a plaintiff seeks 'is legal or equitable depends on (1) the basis for the plaintiff's claim and (2) the nature of the

8

underlying remedies sought.'"  Montanile, 136 S. Ct. at 657 (alterations omitted) (quoting Sereboff v. Mid Atl. Med. Serv., Inc., 547 U.S. 356, 363 (2006)).  A plaintiff seeks equitable relief "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession."  Id. (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)).

In Sereboff, the Court distinguished between "equitable restitution (where a lien attaches because the defendant misappropriated property from the plaintiff) and equitable liens by agreement," where a defendant constructively possesses a fund to which the plaintiff is entitled.  Montanile, 136 S. Ct. at 660.  The Court explained that an ERISA plan, by its terms, could create an equitable lien by agreement on damages recovered from a tortfeasor, where a plan has covered a participant's medical expenses.  Sereboff, 547 U.S. at 364-65.  The Court then clarified in Montanile that, regardless of whether a plaintiff can show an equitable lien by agreement, when the funds sought by the plaintiff have been completely dissipated, "that complete dissipation eliminate[s] the lien."  Montanile, 136 S. Ct. at 659.  In that circumstance, a plaintiff is left to seek damages, which is not a remedy available under § 502(a)(3).  Id.; see also Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993)

(rejecting ERISA claim that sought "nothing other than compensatory damages").

Plaintiff argues that the Plan created an equitable lien by agreement over any funds Marino received from the responsible third party and, accordingly, Defendant was required to hold the settlement funds in escrow until Plaintiff settled its lien. ECF No. 69 at 4. However, Plaintiff does not dispute that Defendant was entitled to attorney's fees for the services it rendered to Marino. Id. at 3, 4. The only funds to which Plaintiff lays claim have therefore left Defendant's hands. Under Montanile, Defendant's dissipation of those funds eliminated any lien Plaintiff may have had. 136 S. Ct. at 659.[2]

The Supreme Court has "'recognized consistently' that someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as a whole.'" US Airways, Inc. v. McCutchen, 569 U.S. 88, 104 (2013) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). This rule, called the common fund doctrine, governs any ERISA plan that does not expressly abrogate it. Id. at 100.[3]

---

[2] As discussed, Defendant waived any defense available pursuant to Montanile based on the dissipation of its fees or costs. But it did not waive any defense under Montanile based on dissipation of the rest of the settlement proceeds.
[3] The parties do not discuss the $55,872.68 Defendant took from the settlement proceeds to cover litigation costs. See ECF No. 42. Because McCutchen indicates that the common fund doctrine applies to costs as well as fees, I do not distinguish between

10

Here, the Plan does not mention the common fund doctrine. Compare with Longaberger Co. v. Kolt, 586 F.3d 459, 463 (6th Cir. 2009) (construing ERISA plan under which "[t]he Plan's rights shall not be subject to reduction under any common fund or similar claims or theories").[4]

The "true recovery" in Marino's civil action was the amount remaining "after the costs of obtaining it [were] deducted." McCutchen, 569 U.S. at 103. When, as here, the common fund doctrine applies, "the recovery to which [Plaintiff] has first claim is [not] every cent the third party paid [but], instead, the money the beneficiary took away." Id.; see also Quest Diagnostics v. Bomani, No. 11-CV-951 (MPS), 2013 WL 3148651, at *1 (D. Conn. June 19, 2013) (noting that, under McCutchen, the common fund doctrine limits ERISA fiduciary's

---

the two. See McCutchen, 569 U.S. at 105 ("Third-party recoveries do not often come free: To get one, an insured must incur lawyer's fees and expenses.") (emphasis added).
[4] As noted previously, White's letter to Butler of September 6, 2012, attaches a subrogation section. ECF No. 41-3 at 42. This subrogation section purports to abrogate the common fund doctrine. Id. at 48. However, such a provision does not appear anywhere in the Plan, which states that "[t]his document and the attached Exhibits set forth the entire Plan." ECF No. 41-1 at 158. Accordingly, I cannot conclude that the common fund doctrine was abrogated here. See CIGNA Corp. v. Amara, 563 U.S. 421, 437 (2011) ("[W]e have no reason to believe that [ERISA] intends . . . to giv[e] the administrator the power to set terms indirectly by including them in the summary plan description.").

11

claim "to the beneficiary's net recovery, after subtracting attorney's fees").[5]

The gist of Plaintiff's position is that Defendant should have reduced its disbursement to Marino by the amount of the claimed lien. As a result of that disbursement, however, Plaintiff cannot show that any "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." Great-West Life, 534 U.S. at 213. "[W]here the wrongdoer no longer has the property at issue in its possession, the claim against that party is legal, not equitable." Treasurer, Trs. of Drury Indus., Inc. Health Care Plan v. Goding, 692 F.3d 888, 896 (8th Cir. 2012).

Plaintiff explains that its claim is based on Longaberger, in which an ERISA plan paid for a participant's medical expenses and the participant then received a settlement from the tortfeasor. Longaberger, 586 F.3d at 461-62. The Sixth Circuit determined that the ERISA fiduciary could hold the participant's attorney liable under § 503(a)(3). Id. at 469. Longaberger read Sereboff as holding "that funds no longer had to be traceable or maintained in order for relief to qualify as

---

[5] To the extent plaintiff claims that defendant's taking a fee prejudiced its ability to be made whole, the $54,127.32 that defendant disbursed to Marino was more than sufficient to reimburse the Plan for his medical costs. See ECF No. 42.

12

equitable under ERISA." 586 F.3d at 469. Longaberger thus determined that because the ERISA plan created an equitable lien by agreement on any settlement proceeds, the fiduciary "was free to follow a portion of the settlement funds" into the hands of the beneficiary's attorney regardless of whether those funds had been disbursed. Id. Since then, the Supreme Court has clarified that even when an equitable lien by agreement exists, if the funds in question have been disbursed, the relief sought is legal rather than equitable. Montanile, 136 S. Ct. at 655.

In addition, the Longaberger court determined that the attorney had no right to fees because the plan's lien, by its terms, preempted this right and abrogated the common fund doctrine. Id. at 471-72. Here, in contrast, the Plan language merely requires the participant to reimburse Plaintiff. It does not mention the common fund doctrine. Because ERISA only permits Plaintiff to enforce the Plan terms, the holding of Longaberger does not help plaintiff here. See 29 U.S.C. § 1132(a)(3); Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co., 771 F.3d 150, 156 (2d Cir. 2014) ("ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets.") (quoting Cent. States, Se. & Sw. Areas Health

& Welfare Fund v. Health Special Risk, Inc., 756 F.3d 356, 365 (5th Cir. 2014)).

Plaintiff cites two cases in which district courts concluded that an ERISA plan fiduciary sought "appropriate equitable relief" under § 502(a)(3) against a participant's legal counsel. See Kohl's Dep't Stores v. Castelli, 961 F. Supp. 2d 415, 426 (E.D.N.Y. 2013); Highmark Blue Cross Blue Shield of W. Va. v. Johnson, No. 2:17-cv-00786, 2018 U.S. Dist. LEXIS 118772 (W.D. Pa. July 17, 2018). In each case, however, as in Longaberger, the plan by its terms created an equitable lien by agreement, and the plaintiff asserted that this lien preempted any right to attorney's fees. See Kohl's, 961 F. Supp. 2d at 418, 425-26; Highmark, 2018 U.S. Dist. LEXIS 118772, at *4, *20. Here, as discussed, Plaintiff does not dispute that Defendant had a right to take its fees and costs out of the settlement proceeds; it argues rather that Defendant should have retained the amount of the claimed lien in an escrow account instead of disbursing it to Marino. Plaintiff "is essentially attempting to impose personal, or legal, liability on [the attorneys] for conferring benefits on [the participant]." Goding, 692 F.3d at 896. Such liability is not cognizable under § 502(a)(3).

In addition, Kohl's rested on the conclusion that the attorneys had at one point "exercised sufficient control" over

14

the money on which the plaintiff had a lien. Kohl's, 961 F. Supp. 2d at 426. In Montanile, the Court held that a plaintiff cannot seek "appropriate equitable relief" for funds that are no longer in the defendant's possession. 136 S. Ct. at 655. Accordingly, I decline to follow Kohl's.[6]

Plaintiff correctly notes that under Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., a nonfiduciary party in interest may be held liable under § 502(a)(3), and "liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." 530 U.S. 238, 245 (2000). But this holding is unhelpful when, as here, the plaintiff does not assert a violation of an ERISA provision, but rather seeks to enforce its rights under an

---

[6] Plaintiff's citation to Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan v. Goodspeed, is misplaced. No. 17-cv-05133, 2019 U.S. Dist. LEXIS 73314 (E.D. Pa. May 1, 2019). In Goodspeed, the plaintiff, the administrator of an employee benefit plan, reimbursed the defendant, a plan participant, for medical costs. Id. at *1. The plaintiff then sought to enforce an equitable lien on a settlement the defendant received from the responsible tortfeasor. Id. at *1-2. The court denied the defendant's motion for summary judgment because he had not completely dissipated all the settlement proceeds, and thus "there [were] specific funds against which an equitable lien could be attached." Id. at *2. That the participant had transferred the funds to a different bank account did not result in dissipation. Id. at *14. Goodspeed is inapposite because the plaintiff sought to enforce an equitable lien against the plan participant, not his attorney. It does not support Plaintiff's claim in this case that Defendant should have refrained from disbursing the settlement funds to Marino until Plaintiff's lien was satisfied.

ERISA plan.  Plaintiff's claim does not turn on whether an attorney can ever be held liable under § 503(a)(3).  The question here is whether Plaintiff seeks "appropriate equitable relief" against Defendant for failing to keep settlement funds in an escrow account until Plaintiff's lien was resolved.  For the reasons discussed above, I agree with Defendant that Plaintiff is seeking damages, not equitable relief.

## IV. Conclusion

Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. The clerk may enter judgment and close the case.

So ordered this 30th day of September 2019.

/s/ RNC
Robert N. Chatigny
United States District Judge